# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

JOHN P.,[1]

              Plaintiff,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

              Defendant.

Case No. 1:21-cv-00022-SLG

## DECISION AND ORDER

On or about March 26, 2015, John P. ("Plaintiff") protectively filed an application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("the Act")[2] alleging disability beginning January 6, 2015.[3] Plaintiff has exhausted his

---

[1] Plaintiff's name is partially redacted in accordance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum, Committee on Court Administration and Case Management of the Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2] Title II of the Social Security Act provides benefits to disabled individuals who are insured by virtue of working and paying Federal Insurance Contributions Act (FICA) taxes for a certain amount of time. Title XVI of the Social Security Act is a needs-based program funded by general tax revenues designed to help disabled individuals who have low or no income. Plaintiff brought claims under Titles II and XVI. Although each program is governed by a separate set of regulations, the regulations governing disability determinations are substantially the same for both programs. *Compare* 20 C.F.R. §§ 404.1501–1599 (governing disability determinations under Title II) *with* 20 C.F.R. §§ 416.901–999d (governing disability determinations under Title XVI). For convenience, the Court cites the regulations governing disability determinations under both titles.

[3] Administrative Record ("A.R.") A.R. 228, 237, 1818. The application summaries, not the applications themselves, appear in the Court's record. Pursuant to 20 C.F.R. §§ 416.340-350, a

administrative remedies and filed a Complaint seeking relief from this Court.[4] Plaintiff's Opening Brief asks the Court to reverse and remand the agency's decision for an immediate award of benefits, or in the alternative, for further administrative proceedings.[5] The Commissioner filed an Answer and Response Brief.[6] Plaintiff filed a Reply Brief.[7]

Oral argument was not requested and was not necessary to the Court's decision. This Court has jurisdiction to hear an appeal from a final decision of the Commissioner of Social Security.[8] For the reasons set forth below, the Commissioner's decision is reversed and remanded for the immediate payment of benefits.

## I. STANDARD OF REVIEW

A decision by the Commissioner to deny disability benefits will not be overturned unless it is either not supported by substantial evidence or is based

---

protective filing date establishes the earliest possible application date based on a claimant's oral inquiry about eligibility or a verbal or written statement of intent to file for benefits. Therefore, March 26, 2015 is considered Plaintiff's application filing date for both SSI and DIB.

[4] Docket 1 (Plaintiff's Compl.).

[5] Docket 18 (Plaintiff's Br.).

[6] Docket 12 (Answer); Docket 21 (Commissioner's Br.).

[7] Docket 22 (Reply).

[8] 42 U.S.C. § 405(g).

upon legal error.[9] "Substantial evidence" has been defined by the United States Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[10] Such evidence must be "more than a mere scintilla," but may be "less than a preponderance."[11] In reviewing the agency's determination, the Court considers the evidence in its entirety, weighing both the evidence that supports and that which detracts from the administrative law judge ("ALJ")'s conclusion.[12] If the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.[13] A reviewing court may only consider the reasons provided by the ALJ in the disability determination and "may not affirm the ALJ on a ground upon which he did not rely."[14] An ALJ's decision will not be reversed if it is based on "harmless error," meaning that the error "is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency

---

[9] *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990)).

[10] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of New York v. NLRB*, 305 U.S. 197, 229 (1938)).

[11] *Id.*; *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).

[12] *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

[13] *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (citing *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

[14] *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014).

explains its decision with less than ideal clarity."[15]  Finally, the ALJ has a "special duty to fully and fairly develop the record and to assure that the claimant's interests are considered."[16]  In particular, the Ninth Circuit has found that the ALJ's duty to develop the record increases when the claimant is unrepresented or is mentally ill and thus unable to protect his own interests.[17]  This duty exists "even when the claimant is represented by counsel."[18]

## II.  DETERMINING DISABILITY

The Social Security Act ("the Act") provides for the payment of disability insurance benefits ("DIB") to individuals who have contributed to the Social Security program and who suffer from a physical or mental disability.[19]  In addition, Supplemental Security Income ("SSI") may be available to individuals who do not have insured status under the Act but who are age 65 or older, blind, or disabled.[20]  Disability is defined in the Act as follows:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

---

[15] *Brown-Hunter v. Colvin,* 806 F.3d 487, 492 (9th Cir. 2015) (internal quotations and citations omitted).

[16] *Smolen v. Chater,* 80 F.3d 1273,1288 (9th Cir. 1996) (quoting *Brown v. Heckler,* 713 F.2d 441, 443 (9th Cir. 1983)); *superseded in part by statute on other grounds*, 20 C.F.R. § 416.929(c)(3). *See also Garcia v. Comm'r of Soc. Sec.,* 768 F.3d 925, 930 (9th Cir. 2014).

[17] *Tonapetyan v. Halter,* 242 F.3d 1144, 1150 (9th Cir. 2001).

[18] *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991) (quoting *Brown,* 713 F.2d at 443).

[19] 42 U.S.C. § 423(a).

[20] 42 U.S.C. § 1381a.

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.[21]

The Act further provides:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.[22]

The Commissioner has established a five-step process for determining disability within the meaning of the Act.[23] A claimant bears the burden of proof at steps one through four in order to make a prima facie showing of disability.[24] If a claimant establishes a prima facie case, the burden of proof then shifts to the agency at step five.[25] The Commissioner can meet this burden in two ways: "(a) by the testimony of a vocational expert, *or* (b) by reference to the Medical-

---

[21] 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

[22] 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

[23] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[24] *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1096 n.1 (9th Cir. 2014) (quoting *Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007)); s*ee also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

[25] *Treichler*, 775 F.3d at 1096 n.1; *Tackett*, 180 F.3d at 1098 (emphasis in original).

Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2."[26] The steps, and the ALJ's findings in this case, are as follows:

**Step 1.** Determine whether the claimant is involved in "substantial gainful activity" (SGA).[27] *The ALJ determined that Plaintiff had not engaged in SGA since January 6, 2015, the alleged onset date.*[28]

**Step 2.** Determine whether the claimant has a medically severe impairment or combination of impairments. A severe impairment significantly limits a claimant's physical or mental ability to do basic work activities and does not consider age, education, or work experience. The severe impairment or combination of impairments must satisfy the twelve-month duration requirement.[29] *The ALJ determined that Plaintiff had the following severe impairments: obesity, Barrett's esophageal stricture-hiatal hernia disorder, status post revision of Nissen fundoplication, and anxiety.*[30] *The ALJ also determined Plaintiff had the following non-severe impairments: lumbar spine disorder,*

---

[26] *Tackett*, 180 F.3d at 1101.

[27] 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

[28] A.R. 1413.

[29] 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

[30] A.R. 1413. Nissen fundoplication is a surgery where the surgeon wraps the top of the stomach around the lower esophagus to reinforces the lower esophageal sphincter, making it less likely that acid will back up in the esophagus. *See* https://www.mayoclinic.org/diseases-conditions/gerd/multimedia/gerd-surgery/img-20006950 (last visited 01/03/2023).

Case 1:21-cv-00022-SLG   Document 23   Filed 01/06/23   Page 6 of 29

*hypertension, and hyperlipidemia. The ALJ found that Plaintiff's post-traumatic stress disorder ("PTSD") was not a medically determinable impairment.*[31]

*The ALJ considered the four broad functional areas of mental function, known as the paragraph B criteria.*[32] *The ALJ found that Plaintiff had no limitation in understanding, remembering, or applying information and no limitation in concentrating, persisting, or maintaining pace. The ALJ also found that Plaintiff had a moderate limitation in interacting with others and no limitation in adapting and managing himself.*[33]

**Step 3.** Determine whether the impairment or combination of impairments meet(s) or equal(s) the severity of any of the listed impairments found in 20 C.F.R. pt. 404, subpt. P, app.1, precluding substantial gainful activity. If the impairment(s) is(are) the equivalent of any of the listed impairments, and meet(s) the duration requirement, the claimant is conclusively presumed to be disabled. If not, the evaluation goes on to the fourth step.[34] *The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled*

---

[31] A.R. 1413–14.

[32] 20 C.F.R., pt. 404, subpt. P, app. 1.

[33] A.R. 1415.

[34] 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

*the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.*[35]

Residual Functional Capacity. Before proceeding to step four, a claimant's residual functional capacity ("RFC") is assessed.[36] Once determined, the RFC is used at both step four and step five. An RFC assessment is a determination of what a claimant is able to do on a sustained basis despite the limitations from his impairments, including impairments that are not severe.[37] *The ALJ determined that Plaintiff had the residual functional capacity to perform light work with the following non-exertional limitations: he can frequently climb ramps or stairs, balance, stoop, kneel, crouch, and crawl; he cannot climb ladders, ropes or scaffolds; he should avoid all unprotected heights and hazardous machinery; and he is limited to frequent interaction with the general public.*[38]

**Step 4.** Determine whether the claimant is capable of performing past relevant work. At this point, the analysis considers whether past relevant work requires the performance of work-related activities that are precluded by the claimant's RFC. If the claimant can still do his past relevant work, the claimant is

---

[35] A.R. 1414.

[36] 20 C.F.R. § 416.945.

[37] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[38] A.R. 1416.

deemed not to be disabled.[39]  Otherwise, the evaluation process moves to the fifth

and final step.[40]  *The ALJ determined that Plaintiff could return to his past relevant*

*work as a house cleaner [sic][41] (DOT #323.687-014) as generally performed in the*

*national economy and food sales attendant (DOT #311.677-014) as generally and*

*actually performed.[42]*

Because the ALJ concluded Plaintiff could return to his past work, she did

not move on to step five, but concluded that Plaintiff was not disabled at any time

from January 6, 2015, through October 12, 2021, the date of the ALJ's decision.[43]

## III.   PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff was born in 1954 and was "closely approaching retirement age" (age

60 or older)[44] for the entire relevant period.[45]  Plaintiff met the insured status

requirements for DIB benefits through December 31, 2019.[46]  Plaintiff applied for

---

[39] 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[40] Step 5.  Determine whether the claimant is able to perform other work in the national economy in view of his age, education, and work experience, and in light of the RFC.  If so, the claimant is not disabled.  If not, the claimant is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

[41] The actual job description for DOT # 323.687.014, as testified to by the vocational examiner, is housekeeping cleaner, which Plaintiff had performed on state ferries.  A.R. 1455.

[42] A.R. 1423–24.

[43] A.R. 1424-25.

[44] 20 C.F.R. § 404.1563(e).

[45] A.R. 72.

[46] A.R. 72.  In order to qualify for disability benefits under Title II, a claimant must have "insured status" and show his disability began on or before his date last insured. 42 U.S.C. §§ 423(a)(1),

disability benefits on March 26, 2015.[47]  Plaintiff's claim was denied initially on January 8, 2016 and again in an unfavorable hearing decision dated December 5, 2017.[48]  After the Appeals Council denied review on September 25, 2018, Plaintiff appealed to this Court.[49]  The Court found the ALJ did not properly consider "Dr. Wilson's treatment notes…related to [P]laintiff's gastric impairment, which appeared to be causing chronic nausea."[50]  The Court reversed and remanded the case for further proceedings with specific instructions that the ALJ should properly "consider Dr. Wilson's treatment notes and determine whether [P]laintiff had any additional limitations related to his gastric impairment that would impact his ability to sustain full-time work."[51]

After the remand, a different ALJ was assigned to the case.[52]  The ALJ held an initial hearing on March 9, 2021, and a supplemental hearing on September 15, 2021.[53]  Plaintiff testified, with representation, at both hearings.  At the March 9,

_____

(c)(2), (d)(1)(A).

[47] A.R. 1818.

[48] A.R. 16, 26.  The initial hearing took place on August 28, 2017. A.R. 16.

[49] A.R. 1-5, 1541–42.

[50] A.R. 1561.

[51] A.R. 1545-62.

[52] ALJ Paul Hebda issued the December 5, 2017 hearing decision. A.R. 26.  ALJ Cecilia LaCara issued the October 12, 2021 hearing decision. A.R. 1425.

[53] A.R. 1470-1514 (transcript of 3/09/2021 hearing); 1437-1469 (transcript of 9/15/2021 hearing).

2021 hearing, Medical Expert ("ME") Robert Smiley, M.D., and Vocational Expert ("VE") Susan Foster testified.[54]  However, the hearing ended abruptly, presumably due to technical difficulties.[55]  Because the VE had not finished her testimony during the hearing, the ALJ issued vocational interrogatories on April 13, 2021.[56]  The VE's response to the interrogatories was proffered on April 23, 2021.[57]  In response, Plaintiff's representative requested a supplemental hearing.[58]  A different VE, Erin Hunt, testified at the supplemental hearing on September 15, 2021.[59]

In an unfavorable hearing decision dated October 12, 2021, the ALJ found Plaintiff could return to his past work, denying Plaintiff's claims at step four.[60]  On December 14, 2021, Plaintiff appealed the Commissioner's final decision to this Court.[61]

---

[54] 1479-1494 (medical expert testimony); 1511-1514 (vocational expert testimony).

[55] A.R. 1513-1514 (hearing transcript ended after the hearing reporter said she could not hear anyone and went off the record).

[56] A.R. 1910-1917.

[57] A.R. 1918-1925.

[58] A.R. 1926-27.

[59] A.R. 1454-1469 (second vocational witness testimony).

[60] A.R. 1407-1425.

[61] Docket 1.  Pursuant to 20 C.F.R. § 404.984(c)-(d), if no exceptions are filed and the Appeals Council does not assume jurisdiction within 60 days after the date of the hearing decision in a case remanded by a federal court, the decision of the ALJ "becomes the final decision of the Commissioner after remand."  Therefore, Plaintiff has exhausted his administrative remedies

# IV.    DISCUSSION

Plaintiff is represented by counsel in this appeal.  Plaintiff alleges: (1) the ALJ erred by failing to properly consider the opinion evidence of three health care providers regarding Plaintiff's mental impairments; and (2) the ALJ failed to properly evaluate Plaintiff's "credibility."[62]    The Commissioner maintains the decision should be affirmed because substantial evidence supports the ALJ's findings.[63]

For the reasons explained below, the Court reverses and remands for the immediate payment of benefits.

### A.    *The ALJ Failed to Properly Consider Opinion Evidence of Three Health Care Providers*

Plaintiff applied for DIB and SSI benefits on or about March 26, 2015, so the regulations prior to March 27, 2017 apply to his claim.[64]    For applications filed before the new regulations became effective, SSA "give[s] more weight" to the medical opinions of examining and treating sources.[65]    When "a treating or

---

and appropriately filed his appeal with this Court.

[62] Docket 18 at 1.

[63] Docket 21 at 2.

[64] On January 18, 2017, the SSA published revisions to the rules regarding the evaluation of medical evidence.  The revisions became effective on March 27, 2017. *See* 82 C.F.R. § 5844, 5869 (1-18-2017).

[65] 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence."[66] This can be done by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."[67]

Even if the ALJ does not give an examining source's opinion significant weight, the opinion must be weighed under the following factors: (1) the examining or treating relationship; (2) the consistency of the medical opinion with the record as a whole; (3) the physician's area of specialization; (4) the supportability of the physician's opinion through relevant evidence; and (5) other relevant factors, such as the physician's degree of familiarity with the SSA's disability process and with other information in the record.[68]

Under the regulations before March 2017, nurse practitioners and licensed social workers are each considered a "not acceptable source" or "other source."[69] Nonetheless, the SSA must consider these opinions and evaluate them pursuant to the same five factors used to evaluate accepted medical source opinions.[70]

---

[66] *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017).

[67] *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

[68] 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

[69] 20 C.F.R. § 404.1513(d).

[70] 20 C.F.R. § 404.1527(f).

Information from "other sources" may be based on special knowledge of the individual and may provide insight into the severity of the impairments and how it affects the claimant's ability to function.[71]  Therefore, an opinion from a nonacceptable source, who has seen the individual in his or her professional capacity, may even be given more weight than that of an acceptable source.[72] Further, the ALJ is only permitted to disregard the testimony of other sources, including treating mental health counselors and social workers, if the ALJ "gives reasons germane to each witness for doing so."[73]  Moreover, an ALJ is required to consider other source opinion evidence when "evaluating an 'acceptable medical source's' opinion."[74]

Plaintiff challenges the ALJ's consideration of the opinions of three providers regarding Plaintiff's mental health: consultative examiner Robert Hunter, M.D., treating advance nurse practitioner Shirley Workman, ANP, and treating mental

---

[71] Social Security Ruling ("SSR") 06-03P, 2006 WL 2329939 (S.S.A. Aug. 9, 2006). "Social Security Rulings [] do not carry the 'force of law,' but they are binding on ALJs nonetheless." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1224 (9th Cir. 2009).

[72] SSR 06-03p.

[73] *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a); *see also* 20 C.F.R. § 404.1527.

[74] SSR 06-03p.  *See also e.g., Revels v. Berryhill,* 874 F.3d 648, 665 (9th Cir. 2017) ("Also, though [the nurse practitioner] is not an 'acceptable medical source,' she is an 'other source' and there are strong reasons to assign weight to her opinion.  [The nurse practitioner] was a treating source who examined [the claimant] at least ten times over two years."); *Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017) (finding that ALJ erred in disregarding opinion of a nurse practitioner who served as claimant's primary medical care provider).

health counselor Keith Merrifield, LCSW. The ALJ did not specify what weight she gave the opinion of consultative examiner Robert Hunter, M.D., but instead determined that testifying psychological expert Colette Valette, Ph.D.'s opinion "better reflects" Plaintiff's RFC.[75] The ALJ gave "little weight" to the 2016 opinion of treating practitioner Shirley Workman, ANP, and the 2016 opinion of treating mental health counselor Keith Merrifield, LCSW. The ALJ made no mention of ANP Workman's second opinion dated August 2020.[76]

## 1. ANP Workman's October 2016 and August 2020 Opinions

Shirley Workman, MSN, MPA, ANP-BC ("ANP Workman") provided mental health treatment to Plaintiff at quarterly visits from 2010 through at least August 2020.[77] ANP Workman provided two opinions regarding Plaintiff's mental impairments.

On October 31, 2016, ANP Workman completed a Mental Residual Functional Capacity Questionnaire. She listed panic disorder with agoraphobia, insomnia, dysthymia, and PTSD as Axis I diagnoses. ANP Workman opined that Plaintiff would be unable to meet competitive standards in numerous areas, including maintaining attention for a two-hour period, making simple work-related decisions, dealing with normal work stress, and interacting appropriately with the

---

[75] A.R. 1421-1423.

[76] A.R. 2710-14.

[77] A.R. 2710.

general public.  She also opined that Plaintiff would miss four or more days of work per month.  She noted that Plaintiff was "making slow but steady progress."  ANP Workman also noted that Plaintiff had attempted to work several times, "but the anxiety becomes overwhelming."  She also noted that Plaintiff had "difficulty driving to the store or to appointments as he experiences severe anxiety that prevents him from reaching certain goals."  ANP Workman opined that Plaintiff had "severe anxiety that is documented in the enclosed records that limits his ability to function and maintain employment."  She also opined that "[Plaintiff] is one of the few patients I can say with certainty [] is disabled as a result of his mental health problems."[78]

The ALJ gave little weight to ANP Workman's October 2016 opinion.  The ALJ provided two reasons for discounting that opinion: (1) the degree of social limitations opined by ANP Workman was "too extreme to be persuasive" and not supported by her treatment notes; and (2) the determination of disability is reserved for the Commissioner.[79]

Because ANP Workman was an "other source," the ALJ was only required to provide germane reasons for discounting her opinions.  Nonetheless, the ALJ provided no citations to support her conclusion that ANP Workman's 2016 opinions

_____

[78] A.R. 1397-1401.

[79] A.R. 1422.

were "too extreme to be persuasive" and not supported by ANP Workman's treatment notes.[80] In contrast, ANP Workman provided examples from her treatment notes of Plaintiff's social limitations (tried to work, difficulty going to the store and appointments) and specifically referenced her treatment notes as documentation.[81] Moreover, the record as a whole fully supports ANP Workman's 2016 opinion, as it is replete with examples of persistent anxiety, panic attacks, hallucinations, and other symptoms.[82]

---

[80] A.R. 1422.

[81] A.R. 1397–1401.

[82] *E.g.,* A.R. 784 (increased anxiety when he goes "too far" from home, auditory hallucinations); 796 (experiences disturbing and persistent thoughts, images, and/or perceptions of traumatic experiences); 1063 (medication and therapy helpful, but continues to have anxiety symptoms); 1065 (decreased ability to support basic needs); 1067 (reported family distress and appeared distressed, tense, anxious); 1095 (anxious mood and possible tactile hallucination, but stable on medications and willing to continue therapy even though uncomfortable);1099 (some progress, but "anxiety appears to prevent him from realizing his goal" of re-connecting with the world); 1102 (unable to attend family July 4th celebration); 1103 (intermittent chest pain believed to be related to anxiety); 1136 (reported daughter usually accompanied him when he had to drive farther distances); 1138 (stable, but reported increased anxiety and stress); 2274–75 (feelings of hopelessness. increased anxiety, had to turn around before reaching destination); 2285 (felt medication was helping, but had not been going outside the home); 2290 (anxiety under good control with current medications, but tried to drive to grocery store and had to turn around and go home). 2302 (panic attack, sweating, extremely frightened, accelerated heart rate, and problems breathing); 2306 (really struggling with agoraphobia); 2308 (reported calling ambulance for panic attack two weeks prior, But able to use relaxation to reduce symptoms); 2312 (anxious mood; reported auditory and tactile hallucinations), 2323 (struggling to keep his appointments due to his fear of leaving his apartment); 2326 (able to get out of his apartment and make his way through a crowed building to deliver an important document); 2344 (anxious mood and reported panic attack), 2358 (a walk to meet his son should have taken 5 minutes, but it took 45 minutes due to stopping for relaxation techniques); 2361 (tried to go fishing, but anxiety prevented him from making it to the dock); 2442-43 (emergency room for anxiety attack, forgot to take medication); 2611 (intermittent chest pains believed to be related to anxiety); 2619 (increased anxiety, shortness of breath, anxious mood and tearful affect, unable to go to work at Walmart, 2647 (in a dark place, lots of crying, difficulty relating to people); 2729 (continues to endorse anxiety symptoms); 2882 (anxious mood; increased medications).

While the ALJ's second reason — the determination of disability is reserved for the Commissioner — is an accurate statement of the law,[83] it cannot serve as a basis to discount ANP Workman's opinion in its entirety. Even disregarding ANP Workman's opinion that Plaintiff was disabled, the portion of her opinion regarding Plaintiff's social and occupational limitations was based on years of treatment and is well supported by the medical record, and the ALJ did not give germane reasons for discounting it.

On August 14, 2020, ANP Workman completed a second Mental Residual Functional Capacity Questionnaire. She included panic disorder and agoraphobia as current diagnoses. ANP Workman noted that Plaintiff experienced "severe anxiety when going to public places such as driving a car, riding a bus, [and] walking in his neighborhood." She also noted that Plaintiff was compliant with treatment by receiving counseling and taking medications to manage his symptoms. Despite Plaintiff following prescribed treatment, ANP Workman opined that Plaintiff was markedly limited in his ability to carry out detailed instructions and maintain attention and concentration for extended periods. She also opined that Plaintiff's ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances was markedly limited.

---

[83] The ultimate determination of disability is reserved to the Commissioner and "treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling weight or special significance." *See* SSR 96-5p.

She concluded that Plaintiff was extremely limited in his ability to work in coordination with or proximity to others, make simple work-related decisions, complete a normal workday and perform at a consistent pace, interact appropriately with the general public, and travel in unfamiliar places or use public transportation.[84]

The ALJ did not discuss ANP Workman's August 2020 opinion. Because the ALJ must give germane reasons for rejecting a nonacceptable source, it follows that an ALJ cannot completely ignore such a source's opinions.[85] Here, ANP Workman's August 2020 opinion was based on a more completed record than Dr. Valette's 2017 testimony. And although an ALJ "is not required to discuss every piece of evidence,"[86] the ALJ's failure here to consider ANP Workman's updated mental health evaluation of Plaintiff in August 2020 leaves the Court uncertain whether the ALJ accorded any consideration to ANP Workman's treatment notes for the period between October 2016, the date of ANP Workman's first evaluation, and August 2020. In sum, the ALJ failed to provide germane reasons for rejecting ANP Workman's 2020 opinions.

---

[84] A.R. 2710–14.

[85] *Cf. Marsh v. Colvin,* 792 F.3d 1170, 1172–73 (9th Cir. 2015) ("Because [an ALJ] must give 'specific and legitimate reasons' for rejecting a treating doctor's opinions, it follows even more strongly that an ALJ cannot in her decision totally ignore a treating doctor and his or her notes, without even mentioning them.") (quoting *Garrison v. Colvin,* 759 F.3d 995, 1012 (9th Cir. 2014))).

[86] *Hiler v. Astrue,* 687 F.3d 1208, 1212 (9th Cir. 2012) (internal quotation omitted).

## 2.	LCSW Merrifield's November 2016 Opinion

Keith Merrifield, LCSW, was Plaintiff's mental health counselor, beginning in March 2015.  On November 15, 2016, LCSW Merrifield completed a Mental Residual Functional Capacity Questionnaire.  He listed Plaintiff's Axis I diagnoses as panic disorder/agoraphobia and PTSD and provided a "guarded" prognosis. LCSW Merrifield did not evaluate Plaintiff's mental abilities and aptitudes. However, he opined that Plaintiff would miss more than four days of work per month because Plaintiff "would be unable to get to work or stay at work due to complex trauma symptoms and panic attacks coupled with a dread of going outside."  He also noted that Plaintiff's "goal is to keep driving and to walk outside even though both activities cause panic attacks."[87]

The ALJ gave LCSW Merrifield's opinion little weight.  As a licensed clinical social worker, LCSW Merrifield is considered an "other source."  Therefore, the ALJ was required to provide germane reasons for discounting his opinion.

First, the ALJ stated that LCSW Merrifield's opinion regarding the number of days of work missed per month was unsupported by the record.[88]  While inconsistency with medical evidence can be a germane reason for discounting other source evidence,[89] the ALJ here did not identify any specific evidence that

---

[87] A.R. 1402–06.

[88] A.R. 1422.

[89] *Bayliss v. Barnhart,* 427 F.3d 1211, 1218 (9th Cir. 2005).

contradicted LCSW Merrifield's opinion. And, as noted above, Plaintiff's anxiety and other mental health impairments waxed and waned during the relevant disability period.[90]

The ALJ also stated that the fact that Plaintiff was able to attend appointments, including weekly therapy sessions, was inconsistent with missing four days of work per month.[91] An ALJ may discount a provider's opinion that is inconsistent with the claimant's level of activity, and particularly if the claimant's activities are easily transferable to the workplace environment.[92] However, as Plaintiff points out, the ability to attend a weekly therapy session is not equivalent to the ability to work on a regular and continuous basis for eight hours a day, five days a week.[93] Moreover, the medical record indicates that Plaintiff frequently reported to providers that anxiety and panic attacks interfered with his ability to leave his home environment, complete daily activities such as shopping, and/or maintain a regular work schedule.[94] Therefore, the ALJ's stated reason for discounting LCSW Merrifield's opinion regarding absenteeism is not germane.

---

[90] *See supra*, n. 82.

[91] A.R. 1422.

[92] *Rollins v. Massanari,* 261 F.3d 853, 856 (9th Cir. 2001).

[93] Docket 18 at 15.

[94] *E.g.,* A.R. 485, 820, 2011, 2110, 2341, 2354, 2731, 2734, 2737.

ANP Workman and LCSW Merrifield each provided mental health care to Plaintiff over an extended period and each opined that Plaintiff would miss at least four days of work per month. The ALJ's failure to provide germane reasons for discounting these two opinions is not harmless, as the vocational expert testified that an individual who is absent from work for 16 or more hours per month would be precluded from competitive employment.[95]

3. *Consultative Examiner Robert Hunter, M.D.*

On November 16, 2015, Plaintiff saw Dr. Hunter for a complete medical examination associated with Plaintiff's disability claim. Dr. Hunter assessed both Plaintiff's mental and physical health. With respect to Plaintiff's mental health, Dr. Hunter opined that Plaintiff's "ability to make occupational, social, and to a lesser extent personal adjustments is impaired by anxiety and agoraphobia." He also opined that "[i]n the unlikely event that a job were to become available that would allow him to work alone, maybe from home, this might allow him to work despite his mental condition."[96]

The ALJ did not address Dr. Hunter's opinion regarding Plaintiff's mental limitations; rather, she stated that Dr. Hunter had given the claimant a physical examination.[97] As a consultative examiner, the ALJ was required to provide

---

[95] A.R. 1461–62, 1468.

[96] A.R. 827.

[97] A.R. 1420.

specific and legitimate reasons supported by substantial evidence for rejecting Dr. Hunter's opinions.[98] Presumably, the ALJ accorded little weight to Dr. Hunter's opinion regarding Plaintiff's mental health, as the ALJ simply stated that Dr. Valette's opinion "better reflects [Plaintiff]'s residual functional capacity."[99] It is not a specific and legitimate reason supported by substantial evidence to ignore Dr. Hunter's medical opinions regarding Plaintiff's mental health limitations. Moreover, Dr. Hunter's opinion is supported by Plaintiff's treatment providers' opinions and the medical record regarding Plaintiff's anxiety and agoraphobia.[100] This constitutes error.

B. *Substantial Evidence does not Support the ALJ's finding of Plaintiff's Poor Work History*

The ALJ discounted Plaintiff's symptom testimony. Plaintiff alleges the ALJ failed to properly evaluate Plaintiff's credibility, asserting that the ALJ failed to "even acknowledge Plaintiff's stellar work history."[101] The Commissioner counters that the ALJ did address Plaintiff's work history, even if she was not required to do so.

---

[98] *Garrison v. Colvin,* 759 F.3d 995, 1012 (9th Cir. 2014) ("Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs.").

[99] A.R. 1423.

[100] A.R. 1397–1401 (Workman), 1402–06 (Merrifield), 2710–14 (Workman). *See also e.g.,* A.R. 485, 820, 2011, 2110, 2341, 2354, 2731, 2734, 2737.

[101] Docket 18 at 19.

Case No. 1:21-cv-00022-SLG
Decision and Order
Page 23 of 29

And regardless, the Commissioner maintains that the ALJ provided other clear and convincing reasons for discounting Plaintiff's testimony.[102]

An ALJ must evaluate Social Security claimants' testimony about their symptoms using a two-step process.[103] First, the ALJ must determine whether the claimant has shown "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."[104] Then, if the claimant has satisfied the first step and there is no evidence of malingering, the ALJ can only reject or discredit the claimant's symptom testimony by providing "specific, clear and convincing reasons for doing so."[105] The "specific, clear and convincing" standard is "the most demanding required in Social Security cases"[106] and is "not an easy requirement to meet."[107] In the evaluation, the ALJ must specifically identify "what testimony is not credible and what evidence undermines the claimant's complaints."[108]

---

[102] Docket 21 at 4–5.

[103] *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017).

[104] *Id.* (quoting *Garrison*, 759 F.3d at 1014–15).

[105] *Id.*

[106] *Garrison*, 759 F.3d at 1015.

[107] *Trevizo*, 871 F.3d at 678–79.

[108] *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

Case No. 1:21-cv-00022-SLG
Decision and Order
Page 24 of 29

As part of the evaluation of Plaintiff's symptom statements, the ALJ indicated that Plaintiff had "a poor work history, which raises concerns regarding motivation to seek and maintain employment."[109]  In his prior appeal to this Court, Plaintiff did not challenge the ALJ's credibility findings.  But the Court nonetheless then noted "the ALJ was simply wrong about plaintiff's sporadic work history.  There is a large gap in his social security earnings because he worked for the State of Alaska, which does not participate in the Social Security retirement benefit system."[110]  Again on remand, the ALJ incorrectly used poor work history as one reason for finding Plaintiff's symptom statements not entirely reliable.[111]  The ALJ's finding regarding Plaintiff's work history is not supported by substantial evidence and does not constitute a clear and convincing reason for discounting Plaintiff's testimony.

But the Commissioner maintains that the ALJ provided other clear and convincing reasons to discount Plaintiff's testimony—specifically, the ALJ referenced Plaintiff's testimony about nausea was not consistent with the medical record and Plaintiff's testimony was inconsistent with his statements regarding his daily activities.[112]  Plaintiff did not address these points in either his opening brief or his reply.  As such, although substantial evidence does not support the ALJ's

---

[109] A.R. 1423.

[110] A.R. 1553 n.32.  *See also* A.R. 244-46; Docket 18 at n.47.

[111] A.R. 1423.

[112] Docket 21 at 5, citing A.R. 1423.

finding with respect to Plaintiff's work history, the Court does not further address the credibility determination.[113]

C.    *The Proper Remedy is Remand for Immediate Payment of Benefits*

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the Court.[114]  When prejudicial error has occurred, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."[115]  To determine which type of remand is appropriate, a court follows a three-step analysis.[116]  Under the credit-as-true rule, in order to remand for payment of benefits, a court must conclude: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; (2) the record has been fully

---

[113] *See Carmickle v. Comm'r, Soc. Sec. Admin.,* 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (The Court does not ordinarily address arguments that are not "specifically and distinctly argued in an appellant's opening brief.") (quotations and citations omitted); *See Gilliland v. Saul*, 821 F. App'x 798, 799 (9th Cir. 2020) ("[If the] ALJ provided at least one valid reason to discount [a claimant's symptom] testimony, error in remaining reasons is harmless[.]") (citation omitted).  However, a lack of supporting medical evidence cannot be the only valid reason provided for discounting a claimant's testimony.  *See Taylor v. Berryhill,* 720 F. App'x 906, 907 (9th Cir. 2018) (stating that the ALJ "failed to provide clear and convincing reasons supported by substantial evidence to support her conclusion that [the claimant's] testimony was not entirely credible," and a "lack of objective medical evidence cannot be the sole reason to discredit claimant testimony") (citing *Burch*, 400 F.3d at 681)).

[114] *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (remanding for determination of benefits where the panel was "convinced that substantial evidence does not support the Secretary's decision, and because no legitimate reasons were advanced to justify disregard of the treating physician's opinion").

[115] *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

[116] *Garrison v. Colvin*, 759 F.3d at 1020 (9th Cir. 2014).

Case No. 1:21-cv-00022-SLG
Decision and Order
Page 26 of 29

developed and further administrative proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.[117]

However, "even if all three requirements are met, [a court] retain[s] 'flexibility' in determining the appropriate remedy" and "may remand on an open record for further proceedings 'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'"[118]

In this case, remanding for the immediate payment of benefits is appropriate. As shown above, the ALJ failed to provide any reasons supported by substantial evidence for discounting Dr. Hunter's opinions regarding Plaintiff's mental health limitations. The ALJ also failed to provide germane reasons for discounting ANP Workman's and LCSW Merrifield's opinions from 2016. And the ALJ failed to address ANP Workman's 2020 opinion.

Second, the record has been fully developed and further administrative proceedings would serve no useful purpose. Ninth Circuit "precedent and the objectives of the credit-as-true rule foreclose the argument that a remand for the purpose of allowing the ALJ to have a mulligan qualifies as a remand for a 'useful

---

[117] *Leon v. Berryhill,* 880 F.3d 1041, 1045 (9th Cir. 2017) (internal citations and quotations omitted).

[118] *Brown-Hunter,* 806 F.3d at 495 (quoting *Garrison,* 759 F.3d at 1021).

purpose' under [the] credit-as-true analysis."[119]  Moreover, further proceedings are only necessary when there are significant factual conflicts between the rejected testimony and the objective medical evidence, such that the record is "uncertain and ambiguous."[120]  Here, the record is not uncertain or ambiguous.  Plaintiff's application for disability benefits has been pending for over seven years.  He has already participated in three hearings and the record contains over 2,500 pages of medical records.[121]  Accordingly, the Court concludes the record is fully developed and further proceedings would serve no useful purpose.

Third, if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.  Both ANP Workman and LCSW Merrifield opined that Plaintiff would be absent from work for four days or more per month.  As the vocational expert testified, an employee who "is regularly missing 16 hours of work or more per month" would be unable to maintain competitive employment.[122] Plaintiff has satisfied the requirements of the credit-as-true standard.

---

[119] *Garrison,* 759 F.3d at 1021 ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication.") (citing *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)).

[120] *Treichler,* 775 F.3d at 1105, 1107.

[121] The entire administrative record is 3,402 pages.  At least 2,500 of this contains medical records and opinions. *See generally,* A.R. 72-105 (SSA's disability determination evaluation); 324-1406 (Plaintiff's medical records exhibited as 1F-30F for the 8/28/2017 hearing); 1931-3357 (Plaintiff's medical records exhibited as 31F-63F for the 9/15/2021 hearing).

[122] A.R. 1468.

Case No. 1:21-cv-00022-SLG
Decision and Order
Page 28 of 29

Even when all three credit-as-true criteria are met, a court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]"[123]  This Court's review of the record as a whole does not create a serious doubt as to Plaintiff's disability.

## V.  CONCLUSION

The Court, having carefully reviewed the administrative record, finds that the ALJ's determinations are not free from legal error and are not supported by substantial evidence.  The Court does not have serious doubt that the Plaintiff is in fact disabled, and therefore, exercises its discretion to remand this case for the immediate award of benefits.

Accordingly, IT IS ORDERED that Plaintiff's request for relief at Docket 18 is GRANTED; the Commissioner's final decision is VACATED, and this matter is REVERSED and REMANDED to the Commissioner for the immediate calculation and award of benefits.

The Clerk of Court is directed to enter a final judgment accordingly.

DATED this 6th day of January, 2023 at Anchorage, Alaska.


*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[123] *Garrison*, 759 F.3d at 1021.